IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JULIA BLACKWELL                                          PLAINTIFF

v.                              No. 5:18-cv-41-DPM

WENDY KELLEY, Director of
the Arkansas Department of Correction          DEFENDANT

## ORDER

**1.** Blackwell's embedded motions to supplement, № 52 & № 56, are partly granted. It appears the direct appeal and Rule 37 opinions were omitted from the exhibits to Kelley's answer. № 36; Rule 5(d)(3) of the Rules Governing Section 2254 Cases in the United States District Courts. The Court is therefore attaching them to this Order. The embedded motions are otherwise denied. Much of what Blackwell wants to submit was already attached in the lengthy exhibits to her amended petition. № 30. And to the extent Blackwell seeks to expand the record, she hasn't met the conditions in 28 U.S.C. § 2254(e)(2). *Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007).

**2.** On *de novo* review, the Court adopts Magistrate Judge Harris's thorough recommendation, № 49, and overrules Blackwell's objections, № 52–53 & № 56. Certain claims in Blackwell's petition would present harder questions if this Court were reviewing the issues *de novo*. But that is not the Court's task at this stage. Instead, most of Blackwell's

claims can't be reviewed at all because they are inexcusably defaulted. And her preserved claims all fail on the merits when analyzed through the strict, doubly deferential standard created by 28 U.S.C. § 2254(d). Her petition will therefore be dismissed with prejudice. No certificate of appealability will issue. 28 U.S.C. § 2253(c)(1)–(2).

So Ordered.

D.P. Marshall Jr.
United States District Judge

31 July 2019

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-14-539

| | |
|---|---|
| JULIA ELIZABETH BLACKWELL<br>APPELLANT | Opinion Delivered February 18, 2015 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>FIRST DIVISION<br>[NO. 60CR-10-2047] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON,<br>JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

A Pulaski County jury convicted Julia Blackwell of felony negligent homicide, manslaughter, and third-degree battery. The jury sentenced Blackwell to ten years' imprisonment for felony negligent homicide and fined her $500 for battery. Blackwell now appeals her conviction, arguing that the circuit court erred when it denied her motion to suppress and her motion to dismiss.[1] We affirm.

On March 28, 2010, a car driven by Blackwell hit a seventy-nine-year-old man, Ralph John Friedmann, who was walking on a sidewalk alongside Breckenridge Drive in Little Rock. Friedmann sustained several injuries. Immediately following the accident, Little Rock police officers transported Blackwell to Baptist Hospital where Blackwell gave a urine sample. Blackwell was then transported to jail. At the jail, Blackwell gave a second urine sample.

---

[1] Blackwell filed a pro se motion to stay proceedings on February 3, 2015. We deny the motion.

On June 8, 2010, Friedmann died from his injuries, and on June 24, 2010, the State charged Blackwell with felony negligent homicide and third-degree battery. Blackwell pled not guilty to the charges.

On April 20, 2012, Blackwell filed a motion to suppress the urine samples taken at Baptist Hospital and at the jail. Blackwell argued that the samples violated her Fourth, Fifth, Sixth, and Fourteenth Amendment rights and Arkansas Code Annotated section 5-65-205. Blackwell also argued that officials failed to maintain a proper chain of custody of the samples.

On August 7, 2013, the circuit court held a suppression hearing. At the hearing, the State's witnesses included Sergeant Greg Birkhead, Officer Natasha ("Tasha") Sims, Amanda Shere, Carrie Frederick, Sarah Dougan, Andrea Swift, and Rebecca Carlisle.

Sergeant Greg Birkhead of the Little Rock Police Department testified that on March 28, 2010, he went to Baptist Hospital to retrieve a blood sample from Blackwell. He stated that when he asked Blackwell for a blood draw, she continually refused and asked to speak with her attorney. Sergeant Birkhead told Blackwell that she was not entitled to an attorney at that time but could call her attorney once she was booked at the jail. After Blackwell refused to give a sample, Sergeant Birkhead contacted personnel in his department to try to get a search warrant to draw Blackwell's blood. However, he could not obtain a warrant. Sergeant Birkhead testified that Officer Sims heard Blackwell refuse to give samples and knew that he had tried to get a search warrant. Sergeant Birkhead also stated that he later witnessed Officer Sims and Blackwell exit a hospital bathroom with a urine sample. He could not recall whether Officer Sims had gloves or whether the cup had tape on it.

2

Officer Tasha Sims, an officer with the Little Rock Police Department, testified that she also went to Baptist Hospital on March 28, 2010, to obtain a blood sample from Blackwell. She explained that she read Blackwell her rights under Act 106[2] and then asked Blackwell to give a blood sample. She testified that Blackwell initially agreed to give a sample; however, when the nurse entered the room to take the sample, Blackwell refused. The nurse then left the room but Officer Sims continued to speak with Blackwell about giving the blood sample. Later, the nurse reentered to try again to draw Blackwell's blood but Blackwell again refused. Officer Sims testified that Blackwell then explained that she was scared of needles. Officer Sims suggested that Blackwell give a urine sample instead, and Blackwell agreed. She took Blackwell to the restroom, and Blackwell provided her with a urine sample. Officer Sims stated that she placed a latex glove over the cup containing the sample and wrote Blackwell's name on it. Officer Sims testified that she normally places tape over the cup but did not have tape with her at that time.

Officer Sims then transported Blackwell to jail. She testified that she kept the sample with her at all times except when she entered the jail with Blackwell. At that time, she locked the sample in her vehicle. In the jail, Officer Sims took a second urine sample from Blackwell. Officer Sims testified that she wrote Blackwell's name on the cup along with the date, time, and her initials. Officers Sims stated that her initials are "T.S."

After processing Blackwell at the jail, Officer Sims drove to the department's property room in downtown Little Rock with both urine samples. Officer Sims testified that, in the

---

[2]Act 106 refers to the right to refuse a chemical test under Arkansas Code Annotated section 5-65-205(a)(1) (Supp. 2007).

property room, she put the samples into separate plastic bags and heat-sealed them. She then assigned a tag number to the samples and placed them in a refrigerator locker. She finally wrote a request to have the samples transferred to the Arkansas State Crime Lab. She testified that she had no further contact with the samples after she placed them in the refrigerator.

On cross-examination, Blackwell's counsel questioned Officer Sims about a previous deposition in a civil case in which Officer Sims testified that she had initialed both samples and sealed both samples with tape. In response to this questioning, Sims explained that at the civil deposition, she testified to her normal practice of taking urine samples and how she remembered taking Blackwell's samples but admitted that her recollection at the civil deposition and at the current hearing could be flawed.

Amanda Shere, a property technician for the Little Rock Police Department, also testified at the suppression hearing. She stated that the urine samples remained in the refrigerator where Officer Sims placed them until March 29, 2010. Shere explained that on that day another property technician, employee 17495, transferred the samples to the property room where she worked. On March 30, 2010, she transported the samples to the Arkansas State Crime Lab for testing.

Shere also explained that samples must be properly sealed, initialed, and dated before the property room will accept them. She noted that if a sample is not properly sealed, she usually sends a notice to the submitting officer. In regard to the samples in this case, she did not remember whether she had sent a notice and did not recall details about the samples' packaging.

4

Carrie Frederick, the property-room supervisor for the Little Rock Police Department, testified that, on March 29, 2010, employee 17495 transferred the samples from the property room where Officer Sims had submitted them to the property room down the street where she and Shere worked. She noted that employee 17495 was Ed Fisher but explained that Fisher had retired and moved to Arizona.

Sarah Dugan, a forensic technician for the Arkansas State Crime Lab, testified that her job includes taking evidence from Shere to make sure the evidence is properly sealed and has an officer's initials. She explained that she then enters the evidence into the computer, assigns barcodes to it, and places it into secure storage. Dugan testified that, according to her records, she followed that procedure with the samples in this case and no problems existed with the samples.

Andrea Swift, a forensic technician for the Arkansas State Crime Lab, stated that her job includes taking evidence out of secure storage and transferring it to analysts. She testified that, on April 1, 2010, she took samples in this case from secure storage to analyst Rebecca Carlisle. She testified that she did not notice anything unusual or make any notations about the packaging of the samples.

Rebecca Carlisle, a forensic toxicologist for the Arkansas State Crime Lab, testified that she received the samples in this case from Swift on April 1, 2010, and placed them in secure storage in the toxicology department to await testing. A few days later, on April 6, 2010, she checked out the samples for testing. After checking out the samples, she inspected their condition and packaging. She testified that the samples were in a single, sealed plastic bag. She

5

explained that, within the plastic bag, each sample was in a latex glove. Carlisle noted that the samples were distinguished from one another by numbers written on the gloves—"1" and "2." She stated that sample "1" had a plastic jar with the labeling "Julia Blackwell" along with the time "20:03." She testified that no initials appeared on the jar of sample "1" and the sample had not been taped shut. She stated that sample "2" had the initials "JM" and the sample had been taped shut. After noting the appearance of the samples, Carlisle stated that she proceeded with the testing. She explained that she tested sample "1" because that sample had the earlier time on it. She testified that sample "1" tested positive for amphetamines. She did not test sample "2."

At the conclusion of this testimony and the hearing, the circuit court denied Blackwell's motion to suppress on all grounds. On September 4, 2013, the State amended the charges against Blackwell to include a charge for manslaughter. Blackwell filed a motion to dismiss the manslaughter charge, arguing that the statute of limitations in Arkansas Code Annotated section 5-1-109(b)(3) barred the charge. The circuit court held a hearing on the motion to dismiss, and at the conclusion of the hearing, the court denied the motion.

On November 7, 2013, a jury trial was held, and the jury convicted Blackwell of all three charges. The jury then sentenced Blackwell for the felony negligent homicide conviction and the battery conviction but did not sentence her for the manslaughter conviction.[3] However, Blackwell's judgment reflects the following sentences: zero years'

_____

[3]The record shows that in a bench conference before the sentencing stage, the State asked the court not to send the manslaughter-sentencing instruction to the jury. Specifically, the prosecutor stated, "I think the defense would make a motion. We would actually, we'll make a motion. I don't believe double jeopardy allows the jury to sentence on negligent

6

imprisonment for manslaughter, ten years' imprisonment for felony negligent homicide, and a $500 fine for battery. Blackwell filed a timely notice of appeal, arguing that the circuit court erred when it denied her motion to suppress the urine samples and her motion to dismiss the manslaughter charge.

## I. *Motion to Suppress*

Blackwell argues that the circuit court should have suppressed the urine sample because the taking of the sample violated the plain language of Arkansas Code Annotated section 5-65-205(a)(1) and her rights under the Fifth and Sixth Amendments to the United States Constitution and the corresponding articles under the Arkansas Constitution. Blackwell also claims that the circuit court should have suppressed the urine samples because the testimony at the suppression hearing established that the samples lacked authenticity.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reversing only if the circuit court's ruling denying the motion is clearly against the preponderance of the evidence. *Hart v. State*, 368 Ark. 237, 244 S.W.3d 670 (2006). We defer to the superiority of the circuit judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Montgomery v. State*, 367 Ark. 485, 241 S.W.3d 753 (2006).

Blackwell first argues that the taking of the urine samples violated the plain language of Arkansas Code Annotated section 5-65-205 because Officer Sims and Sergeant Birkhead repeatedly asked Blackwell to submit to chemical testing despite her refusals. Specifically, Blackwell claims that the language of section 5-65-205 restricts officers to only one request homicide and manslaughter."

7

for chemical tests.

Under Arkansas's implied-consent statute, any person who operates a motor vehicle shall be deemed to have given consent to a chemical test or tests of her blood, breath, or urine if that person is involved in an accident while operating a motor vehicle. Ark. Code Ann. § 5-65-202(a) (Repl. 2005). However, Arkansas Code Annotated section 5-65-205(a)(1) provides that "[i]f a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in [section] 5-65-202, no chemical test shall be given." We strictly construe criminal statutes and resolve any doubts in favor of the defendant. *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *State v. Havens*, 337 Ark. 161, 987 S.W.2d 686 (1999). If the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id.*

In construing section 5-65-205 in this light, we find no merit in Blackwell's argument. Nothing in the statute limits law-enforcement officers to one request. Further, Officer Birkhead and Officer Sims complied with the statute when they did not force Blackwell to submit to a blood test when she refused, and Officer Sims obtained a urine sample only after Blackwell agreed to a urine test. Accordingly, the giving of the urine samples did not violate the plain language of the statute.

Blackwell next argues that the taking of the urine samples violated her rights under the

8

Fifth Amendment and her Sixth Amendment right to counsel.[4] Our supreme court has declined to extend the Fifth Amendment privilege protection to the collection of a chemical test and has specifically held that *Miranda* rights do not apply to taking tests under the implied-consent statute. *Talley v. State*, 2010 Ark. 357, 377 S.W.3d 222 (holding that the Fifth Amendment did not prevent the compelled production of DNA); *Wright v. State*, 288 Ark. 209, 703 S.W.2d 850 (1986) (holding that the *Miranda* rights do not apply to taking tests under the implied-consent statute). Further, our supreme court has held that submitting to a scientific test is not a critical stage in criminal proceedings subject to the right to counsel under the Sixth Amendment. *Forrester v. State*, 2010 Ark. 291 (holding that there is no right to counsel prior to a breathalyzer). Accordingly, the taking of the urine samples did not violate Blackwell's Fifth Amendment rights or her Sixth Amendment right to counsel.

Blackwell finally asserts that the circuit court should have suppressed the samples because testimony at the suppression hearing established that the samples lacked authenticity. Specifically, Blackwell claims that the testimony establishes that the samples were tampered with or confused with another sample. Blackwell points to Officer Sims's testimony to establish tampering and confusion. She notes that Officer Sims's testimony concerning the packaging of the samples conflicts with her earlier deposition testimony as well as the forensic toxicologist's description of the samples' packaging.

In making this argument, Blackwell asserts that the facts of this case are on point with

---

[4]Blackwell also appears to argue that the sample violated her due-process rights under the Fourteenth Amendment However, Blackwell merely states that the sample violated her due-process rights but does not argue how those rights were violated. This court does not consider an assertion when the appellant fails to present a convincing argument in its support. *Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553.

*Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). In *Crisco*, our supreme court held that a drug sample lacked authenticity when an officer's testimony concerning the appearance of the sample differed from the crime-lab chemist's testimony. *Id.* The officer described the sample as an off-white powder whereas the chemist described it as a tan, rock-like substance. *Id.* Most significantly, the chemist stated that he would not have described the substance as an off-white powder. *Id.* Our supreme court held that the marked difference in the descriptions of the substance established a lack of authenticity. *Id.*

The facts in *Crisco* are distinguishable from the instant case. In *Crisco*, the testimony of the officer and the chemist differed on the description of the actual substance. In this case, Officer Sims's description of the urine did not differ from the toxicologist's description. The individuals disagreed only on the packaging of the sample, and Officer Sims admitted that she could have mistakenly described the packaging. Further, our supreme court has held that any inconsistencies in the testimony offered to establish chain of custody are for the trier of fact to resolve. *Owens v. State*, 2011 Ark. App. 763, 387 S.W.3d 250 (citing *Dansby v. State*, 338 Ark. 697, 1 S.W.3d 403 (1999)). The circuit court judge observed the witnesses and heard their testimony and concluded that the samples should be admitted. Accordingly, the urine sample did not lack authenticity, and the circuit court properly denied Blackwell's motion to suppress.

## II. *Motion to Dismiss*

Blackwell argues that the circuit court erred when it denied her motion to dismiss the manslaughter charge because the charge was barred by the three-year statute of limitations provided in Arkansas Code Annotated section 5-1-109(b)(3). Specifically, Blackwell claims

that the statute of limitations began running on June 8, 2010, the day that Friedmann died, and expired three years later on June 8, 2013. Thus, Blackwell asserts the manslaughter charge filed on September 4, 2013, was time-barred. The State argues that the felony negligent homicide charge filed on June 24, 2010, tolled the statute of limitations. In support of its position, the State relies on section 5-1-109(g)(2), which provides that the statute of limitation does not run during "any period when a prosecution against the accused for the same conduct is pending in this state."

We agree with the State. Both the felony negligent-homicide charge and the manslaughter charge arise out of a single action—Blackwell striking Friedmann with her car. Thus, the filing of the felony negligent-homicide charge tolled the statute of limitations. Accordingly, the circuit court properly denied Blackwell's motion to dismiss.

### III. *Illegal Sentence*

Finally, this court notes that Blackwell's sentence for manslaughter is illegal on its face. Specifically, the judgment reflects a sentence of zero years' imprisonment for the manslaughter conviction, a Class C felony, which requires a three-year minimum. *See* Ark. Code Ann. § 5-10-104(c) (Repl. 2006); Ark. Code Ann. § 5-4-401(a)(4) (Repl. 2006). Although this court can consider an argument regarding an illegal sentence for the first time on appeal, the aggrieved party must nonetheless appeal or cross-appeal in order to invoke the appellate court's jurisdiction over the claim. *See Sullivan v. State*, 366 Ark. 183, 234 S.W.3d 285 (2006); *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003); *Cook v. State*, 46 Ark. App. 169, 878

11

S.W.2d 765 (1994). Here, the State did not file a notice of appeal or of cross-appeal.

Accordingly, we cannot address the legality of Blackwell's manslaughter sentence.[5]

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Debra J. Reece*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

---

[5]This court also notes that Blackwell's conviction for both manslaughter and felony negligent homicide may violate double jeopardy. However, Blackwell did not raise the issue on appeal, and thus it is not preserved for our review. *See State v. Montague*, 341 Ark. 144, 14 S.W.3d 867 (2000); *but see Rowbottom v. State*, 341 Ark 33, 13 S.W.3d 904 (2000) (holding that a double-jeopardy claim was a fundamental right that an appellant could raise for the first time in Rule 37 proceedings).

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-16-833

| | | |
|---|---|---|
| JULIA BLACKWELL | | **Opinion Delivered:** April 26, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI |
| V. | | COUNTY CIRCUIT COURT, |
| | | FIRST DIVISION |
| | | [NO. 60CR-10-2047] |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | HONORABLE LEON JOHNSON, |
| | | JUDGE |
| | | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Julia Blackwell appeals the order of the Pulaski County Circuit Court denying her petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2016). We affirm the circuit court's decision.

On March 28, 2010, a car driven by Blackwell hit Ralph John Friedmann, who was walking on a sidewalk along Breckenridge Drive in Little Rock. Friedmann died from his injuries on June 8, 2010. On June 24, 2010, the State charged Blackwell with felony negligent homicide and third-degree battery for the death of Friedmann. On September 4, 2013, the State amended the charges to include a charge for manslaughter.

Thereafter, a jury convicted Blackwell of felony negligent homicide, manslaughter, and third-degree battery. The jury sentenced Blackwell to ten years' imprisonment for felony negligent homicide and fined her $500 for third-degree battery. The jury did not

sentence Blackwell on the manslaughter charge at the request of the State. On February 18, 2015, this court affirmed Blackwell's conviction. *Blackwell v. State*, 2015 Ark. App. 96, 455 S.W.3d 848.

On June 5, 2015, Blackwell filed a petition in the Pulaski County Circuit Court for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. She alleged that her trial counsel was ineffective for failing to (1) move to dismiss either the felony negligent-homicide charge or the manslaughter charge; (2) object to the use of nonpattern jury instructions; (3) cross-examine former police officer Natasha Sims about her termination from the Little Rock Police Department; (4) protect her right to trial by an impartial jury; (5) object to the prosecutor's improper acquisition of her sealed medical records; and (6) object or move for a mistrial after the prosecutor made personal attacks on her trial counsel during closing arguments.

On February 19, 2016, the court held an evidentiary hearing and took the matter under advisement. Thereafter, on May 27, 2016, the court entered an order denying Blackwell's petition. On June 23, 2016, Blackwell appealed the decision. We assumed jurisdiction of this appeal pursuant to footnote 1 in *Barnes v. State*, 2017 Ark. 76, ___ S.W.3d ___ (per curiam).

We do not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Reed v. State*, 2011 Ark. 115 (per curiam). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

2

The benchmark question to be resolved in judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Norris v. State*, 2013 Ark. 205, 427 S.W.3d 626 (per curiam). We assess the effectiveness of counsel under a two-prong standard as set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Lowe v. State*, 2012 Ark. 185, 423 S.W.3d 6 (per curiam). Under the *Strickland* test, a claimant must show that counsel's performance was deficient, and the claimant must also show that the deficient performance prejudiced the defense to the extent that the appellant was deprived of a fair trial. *Id*. A claimant must satisfy both prongs of the test, and it is unnecessary to examine both components of the inquiry if the petitioner fails to satisfy either requirement. *See Pennington v. State*, 2013 Ark. 39 (per curiam).

A petitioner claiming ineffective assistance must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the petitioner by the Sixth Amendment to the United States Constitution. *Walton v. State*, 2013 Ark. 254, (per curiam). There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel that when viewed from counsel's perspective at the time of the trial could not have been the result of reasonable professional judgment. *Id*.

In order to meet the second prong of the test, a claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent

3

counsel's errors. *Delamar v. State*, 2011 Ark. 87 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

On appeal, Blackwell first argues that her trial counsel was ineffective for failing to obtain a ruling from the circuit court on the use of nonpattern jury instructions at trial. She recognizes that her trial attorney made "extensive" arguments at trial concerning the instructions but asserts that she failed to obtain a ruling to preserve the issue for appeal. She claims that the verdict forms in the instructions were flawed because they did not have a place for the jury to indicate "not guilty" for felony negligent homicide and manslaughter. She asserts that the instructions amounted to a fundamental structural error in the trial mechanism. The verdict forms submitted to the jury stated as follows:

### COUNT 1

We, the jury, find Julia Blackwell guilty of Negligent Homicide (intoxication).

———————————<br>FOREPERSON

We, the jury, find Julia Blackwell guilty of Negligent Homicide (negligence).

———————————<br>FOREPERSON

We, the jury, find Julia Blackwell not guilty of Negligent Homicide (negligence).

———————————<br>FOREPERSON

. . . .

### COUNT 2

We, the jury, find Julia Blackwell guilty of Manslaughter (recklessness).

———————————<br>FOREPERSON

We, the jury, find Julia Blackwell guilty of Negligent Homicide (negligence).

———————————<br>FOREPERSON

We, the jury, find Julia Blackwell not guilty of Negligent Homicide (negligence).

_____

FOREPERSON

We hold that the circuit court did not clearly err in finding that Blackwell was not entitled to postconviction relief under this claim. Blackwell incorrectly states that the circuit court made no ruling on her trial counsel's objection to the instructions. The trial record shows that the circuit court found that Blackwell's trial counsel had made a "good argument" concerning the instructions, but the court submitted the nonpattern instructions to the jury. Further, the court asked Blackwell's trial counsel whether she wanted to proffer her instructions, and she did. Thus, the trial court did make a ruling on the issue.

Further, as to Blackwell's argument that her counsel should have appealed the issue, she has failed to establish a meritorious issue that she could have appealed. A petitioner who claims that appellate counsel was ineffective bears the burden of making a clear showing that counsel failed to raise some meritorious issue on appeal. *Moore v. State*, 2011 Ark. 269 (per curiam). The petitioner must show that there could have been a specific issue raised on appeal that would have resulted in the appellate court's declaring reversible error. *Walton v. State*, 2013 Ark. 254 (per curiam).

In this case, Blackwell claims the instructions amounted to a fundamental structural defect in the trial, like the instructions in *Sullivan v. Louisiana*, 508 U.S. 275 (1993). We disagree. In *Sullivan*, the United States Supreme Court held that an erroneous instruction that misstated the State's burden of proof was a structural defect in the trial mechanism. *Id.* The Court reasoned that, where the jury convicts a defendant according to an erroneous

5

instruction about the State's burden of proof, there has been no actual finding of guilty as required by the Sixth Amendment. *Id.* Here, Blackwell has not shown that the instructions misstated the law such that there had been no actual finding of guilt. The verdict forms instruct the jury to first consider the higher charge, then the lesser charge, and then provide the jury with the option to find Blackwell not guilty. Accordingly, we hold that the circuit court did not clearly err in finding that Blackwell was not entitled to relief under this ground.

Blackwell next argues that the circuit court erred in finding that her trial counsel was not ineffective for failing to cross-examine former police officer Natasha Sims concerning her termination from the Little Rock Police Department based on allegations of dishonesty. She points out that crucial pieces of evidence at trial were her urine samples, which Sims took. She recognizes that her counsel attempted to question Sims about the allegations at a suppression hearing and that the circuit court instructed her not to question Sims about the allegations because Sims had appealed her termination. However, Blackwell claims that her trial counsel should have raised the issue at trial because, during questioning at trial, the State asked Sims why she had been terminated and Sims stated that she had appealed the termination. The circuit court found that Blackwell was not entitled to relief under this ground because Blackwell's trial counsel made a strategic decision not to cross-examine Sims about her termination.

When a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for relief under Rule 37.1. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. Counsel is allowed great leeway in making strategic and tactical decisions. *Leak v. State*, 2011 Ark. 353 (per

curiam). In this case, counsel testified at the evidentiary hearing that she "wrestled" with the decision whether to impeach Sims about her termination but decided not to cross-examine her because the trial court had already stated that it would exclude that testimony. She further testified that she had researched the status of Sims's appeal and determined that it was ongoing. Given this testimony, we cannot say that the circuit court clearly erred in finding that counsel made a reasonable and professional decision not to question Sims about her termination.

Blackwell next argues that her trial counsel was ineffective for failing to move to dismiss either the felony negligent-homicide charge or the manslaughter charge because the charges violate her right against double jeopardy. When it is alleged that counsel was ineffective for the failure to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. Thus, in this case, Blackwell must show that a double-jeopardy argument would have resulted in the dismissal of the charges for felony negligent homicide or manslaughter.

Blackwell has failed to make that showing. She summarily asserts that her counsel should have moved to dismiss the charges because the charges violate double jeopardy, but she cites no authority in support of her argument.[1] "Conclusory statements in a [Rule 37]

---

[1]In her brief, Blackwell references footnote number five in this court's opinion on the direct appeal of her convictions and claims that her convictions violate double jeopardy because this court found that her convictions violate double jeopardy. She is mistaken. This court did not find that her convictions violate double jeopardy. *See Blackwell v. State*, 2015 Ark. App. 96, 455 S.W.3d 848.

7

petition or in a brief on appeal are insufficient to overcome the presumption that counsel was effective." *Ellis v. State*, 2014 Ark. 24, at 3 (per curiam). We do not research or develop arguments for appellants. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. Moreover, the State correctly asserts in its brief that Blackwell's convictions do not violate double jeopardy because felony negligent homicide requires the element of intoxication, which is not included in the definition of manslaughter. *See Walker v. State*, 2012 Ark. App. 61, at 5, 389 S.W.3d 10, 13 ("Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). Accordingly, we find no merit here.

Blackwell next argues that her counsel was ineffective for failing to protect her right to trial by an impartial jury. She points out that during the sentencing phase of trial, the State published a photograph to the jury of the victim donating a check to Arkansas Children's Hospital and that a juror was in the picture. She asserts that her trial counsel should have moved for a mistrial as a result of the photo.

The decision to accept or exclude a particular juror may be a matter of trial strategy or technique. *Butler v. State*, 2011 Ark. 435, 384 S.W.3d 526 (per curiam). Further, as we have stated, counsel cannot be considered deficient for failing to make a meritless objection. *Conley*, 2014 Ark. 172, 433 S.W.3d 234. A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *See Ellis v. State*, 2014 Ark. 24 (per curiam); *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729.

In this case, the trial record shows that after the court learned that the juror was in the photo, it called a recess and questioned the juror. The juror stated that she had been employed at Arkansas Children's Hospital for thirteen years, that she had worked with thousands of donors and volunteers, that she did not remember the picture, and that she could remain fair and impartial. At the evidentiary hearing, Blackwell's trial counsel testified that she was satisfied with the juror's response but that Blackwell insisted that she object to the juror's remaining on the panel and that she did object. However, the trial court overruled the objection. Trial counsel further stated that she did not move for a mistrial because the juror had no memory of the picture, which was more than ten years old. Given this evidence, we hold that the circuit court did not clearly err in finding that Blackwell's trial counsel was not ineffective for not moving for a mistrial based on the juror's presence in the photo.

Blackwell next argues that her trial counsel was ineffective for failing to appeal the State's acquisition of her sealed medical and psychological records filed in a separate, civil case. The circuit court found that Blackwell had no relief under this claim because her counsel objected to the use of the records and the records were not used at trial. At the evidentiary hearing, trial counsel testified that when she learned that the State had obtained the records, she filed a motion in limine to exclude the use of the records. Further, she explained that the records were not introduced at trial and that no witnesses testified about the records.

We hold that the circuit court did not clearly err in finding that Blackwell's counsel was not ineffective for failing to appeal the State's acquisition of her medical and

9

psychological records. Once again, a petitioner who claims that appellate counsel was ineffective bears the burden of making a clear showing that counsel failed to raise some meritorious issue on appeal. *Moore*, 2011 Ark. 269. The petitioner must show that there could have been a specific issue raised on appeal that would have resulted in the appellate court's declaring reversible error. *Walton*, 2013 Ark. 254. Blackwell has cited no authority showing that the State's acquisition of her records would have resulted in a reversible error. Accordingly, there is no basis on which to grant postconviction relief on this claim.

Blackwell lastly argues that her trial counsel was ineffective for failing to move for a mistrial after the prosecutor made personal attacks on her counsel during closing remarks. She points out that the prosecutor made comments questioning her counsel's credibility such as that her "whole idea . . . her whole alternate theory is fantasy." When it is alleged that counsel was ineffective for the failure to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Conley*, 2014 Ark. 172, 433 S.W.3d 234. It is well settled that closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Wooten v. State*, 2016 Ark. 376, 502 S.W.3d 503. Further, as we have stated, a mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *See Ellis*, 2014 Ark. 24; *Green*, 2013 Ark. 497, 430 S.W.3d 729. Blackwell has not shown the prosecutor's comments warranted a mistrial. Accordingly, we hold that the circuit court did not clearly err in finding that Blackwell was not entitled to relief under this claim.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.